895 F.2d 1468
 283 U.S.App.D.C. 46
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
MISSOURI PACIFIC RAILROAD COMPANY, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION.
 No. 89-1250.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 16, 1990.
Rehearing Denied April 5, 1990.
 
 Before MIKVA, EDWARDS, and SILBERMAN, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on the record on petition for review of an order of the Interstate Commerce Commission and on the briefs filed by the parties. The issues have been accorded full consideration by the court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review is denied.
 
 
 3
 The Clerk is directed to withold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Petitioner, Missouri Pacific Railroad Company ("MP") challenges the Interstate Commerce Commission's ("ICC" or "Commission") denial of MP's request to abandon a segment of rail line, claiming that the ICC's order does not include sufficient facts to justify the ICC's reversing its earlier position. Since the ICC's order incorporates the record of other related Commission decisions, we conclude that it contains enough specific new facts to be sustainable. Accordingly, we deny the petition for review.
 
 
 5
 MP sought ICC permission to abandon a 13.5 mile rail line that serves farmers in Overbrook, Kansas ("Overbrook Farmers" or "Farmers"). The ICC granted MP's request, based upon MP's projected cost figures and traffic patterns. Missouri Pacific Railroad Company--Abandonment--In Osage County, KS (Unpublished Decision of Dec. 15, 1988) at 14 ("Abandonment Decision"). While rehearing was pending, however, the Commission determined in a separate proceeding that MP had performed an unlawful embargo against the Overbrook Farmers by refusing to carry goods during the preceding three years. Overbrook Farmers Union Cooperative Association--Petition for Declaratory Order, 5 I.C.C.2d 316 (1989) ("Embargo Decision"). On rehearing, the ICC incorporated the Embargo Decision by reference, and reversed its earlier decision in a two-page order. Missouri Pacific Railroad Company--Abandonment--In Osage County, KS Decision on Rehearing (Unpublished Decision of Mar. 28, 1989) ("Rehearing Decision").
 
 
 6
 In the initial abandonment proceeding, MP was required to submit detailed traffic and financial data showing the revenues and costs of providing service on the line for the two preceding calendar years. 49 C.F.R. Sec. 1152.22. Because MP had refused to provide service during those years, it could provide only estimates of what its cost and revenues would have been during that period. Relying upon these figures, the Commission concluded that continued operation would cause MP to incur an annual operating loss and that the Farmers had developed adequate alternatives to rail service.
 
 
 7
 In an abandonment proceeding, the carrier has the burden of proof to show that "the present or future public convenience requires or permits abandonment." 49 U.S.C. Sec. 1904(d)(1). Our review of the ICC's determination concerning the public convenience is narrow. Iowa Terminal Railroad Co. v. ICC, 853 F.2d 965, 969 (D.C.Cir.1988). The court examines only whether there is a rational, articulated connection between the facts found and the choice made. Motor Vehicle Mfrs. Ass'n v. State Farm, 463 U.S. 29, 43 (1983). The agency's statements need not be perfectly clear as long as "the agency's path may be reasonably discerned." Id.
 
 
 8
 MP argues that the Commission's decision was arbitrary and capricious because it did not explain why the financial figures accepted in the earlier proceeding were no longer valid. It also argues that the Commission did not articulate a satisfactory explanation for its conclusion that abandonment would have a serious adverse effect on the Overbrook Farmers.
 
 
 9
 We find that the Rehearing Decision, though sparse, adequately explains the Commission's departure from its prior conclusions about both MP's financial posture and the anticipated effect on the Farmers. On rehearing, the Commission took official notice of the Embargo Decision and the record in that case, as well as the briefs filed by the Farmers. Rehearing Decision at 2. The Rehearing Decision observes that the accuracy of MP's projected data was "vigorously contested" in both the Embargo and Abandonment proceedings. Id. Specifically, MP's figures were based on the total shipping done by the Farmers during the embargo by truck and otherwise. The Embargo Decision record, however, reveals that on at least three occasions, MP refused to ship by rail for the Farmers and the Farmers were unable to obtain a substitute carrier. Embargo Decision at 2-4. In addition, the Farmers' allege other markets that they could not enter because they did not have a rail carrier. ICC Docket No. AB-3, Overbrook Farmers' Appeal of Initial Decision at 23. Since the Embargo Decision demonstrates that MP's figures were based upon what the Farmers shipped without rail support, rather than what they could have shipped by rail, it provides ample support for questioning MP's cost and traffic figures.
 
 
 10
 By unlawfully refusing service, MP ensured that the ICC would have to base its abandonment decision on estimates derived from artificially truncated traffic patterns. While the ICC accepted this estimated data at first, it properly reweighed that evidence in light of the Embargo Decision and found that MP's evidence was no longer sufficient to carry its burden of proof. Rehearing Decision at 2.
 
 
 11
 MP's only other contention, that the ICC exceeded its authority by requiring it to operate at a loss, is resolved by this same analysis. If the ICC could not rely upon MP's data, then MP failed to carry its burden of proving that it actually would sustain an operating loss.
 
 
 12
 We affirm the ICC's decision, but we admonish the Commission to take greater care to set forth its reasoning in future decisions.